## Nossokoff *v.* Pittsburgh, Appellant.

Argued October 7, 1954. Before STEARNE, JONES, CHIDSEY, MUSMANNO and ARNOLD, JJ.

*Thomas E. Barton,* Assistant City Solicitor, with him *J. Frank McKenna, Jr.,* City Solicitor, for appellant.

*Dennis C. Harrington,* with him *James P. Mc-Ardle* and *Louis Bowytz,* for appellee.

OPINION BY MR. JUSTICE ARNOLD, January 3, 1955:

The sole contention of the appellant here is that the verdict, reduced by the lower court to $15,000, is excessive.

The plaintiff, John Nossokoff, fell on a broken pavement and suffered a comminuted fracture of the left wrist involving the distal end of the radius, with a posterior tilting of the angle of the wrist. The injury necessitated immediate surgery and immobilization of the entire arm in a cast for three months. The plaintiff, who is a violinist, has lost the professional use of his left arm. He lacks 10° dorsal flexion, 15° normal palmar flexion, and has 15° loss of motion in turning his wrist laterally toward the ulnar side. He is incapable of playing the violin.

He sustained other injuries. His face was cut and bruised, his nose was flattened, his right knee cut, and he lost all his teeth.

Five days a week the plaintiff was employed as a health inspector for the city of Pittsburgh. He devoted his evenings and week-ends to playing the violin in orchestras, performing at recitals and private concerts, and in giving instruction on that instrument. He has continued his regular employment and receives his pre-accident salary.

Prior to the accident he earned at the Nixon theatre $90.00 per week when he played for musicals and $60.00 per week when dramatic plays were being produced. The earnings at the Nixon theatre averaged $2,400.00 a year. His medical expenses amounted to $1,113.00. He has lost in actual money damages some $10,248.00, which would leave less than $5,000.00 for pain and suffering and impairment of his earning

power. He is 63 years of age. The revenue lost from his musical profession would more than make up the difference between $10,248.00 and the amount of the reduced verdict.

In any event the amount of the verdict is more than justified by the record.

Some question was raised by the plaintiff at the trial, and denied by the City of Pittsburgh, that he was entitled to damages for loss of solace caused by inability to use the violin, and this in addition to the usual compensatory damages sustained by him. When this case was argued the proposition was merely affirmed by one side and denied by the other. It was not set forth as an item of damages in the complaint nor referred to by the lower court. We are unwilling to determine that question in the absence of argument or the citation of any authorities. It would be a dictum unnecessary and inexpedient to pronounce.

Judgment affirmed.

———

CONCURRING OPINION BY MR. JUSTICE MUSMANNO:

I concur in the conclusion reached by the Majority that the amount of the verdict is more than justified by the record. I would go further, however, and say that the deprivation of a cultivated and artistic enjoyment to which one has devoted his whole life falls definitely within the sphere of pain, suffering and inconvenience. The outer borders of the area covered by this item of damages in negligence cases have never been precisely drawn. However, those borders certainly extend far enough to encompass the mental distress, the anguish of spirit and the heartaching disappointment which attend the paralyzation of an extraordinary mental or physical aptitude or endowment.

Whether it be a singer, sculptor, painter, poet, or actor, there is a personal joy in an artist's work which goes over and beyond what he receives in legal tender for the objective productions resulting from the exercise of his talents. The enjoyment of music particularly falls into that domain of personal happiness the destruction of which is a loss that cannot be ignored in law. The plaintiff did not follow music only for the money it put into his pocket. He derived a great pleasure from giving lessons on the violin, even gratis. When asked: "Did you teach the violin, Mr. Nossokoff, for the purpose of remuneration or money you would get for it" he answered: "No, I didn't. The violin was the dearest and nearest thing to my heart. And these kids were poor. I even bought them their violins and gave them music stands, bought them clothes and took them right on the stand of the different engagements so they could get actual experience. And later on they became very top-notchers." The defendant City of Pittsburgh is not to be exonerated from responsibility for damages because of Nossokoff's generosity. No one, without legal liability, may deprive another of his inalienable right to donate his time or money gratuitously. When the City of Pittsburgh allowed a street condition to exist which robbed Nossokoff of the wealth of charitable donation to others it became liable monetarily for the worth of that treasure now destroyed forever.

If the law allows recovery, as it does, for the happiness torn from athletes when they are barred from swimming pools, tennis courts, golf links, baseball diamonds and football gridirons, it certainly must take cognizance of the fact that the creation with one's own hands or voice of that ineffable substance known as music constitutes a happiness of the highest order in the appraisement of all phenomena which brings contentment to man.

Music has also a therapeutic value which cannot be disregarded in appraising the loss suffered by the plaintiff because of the disintegration of muscle and bone employed in the playing of the violin. At the fifth annual conference of the National Association of Music Therapy in New York in October, 1954, the national president of the association, Mrs. Myrtle Fish Thompson, said: "With the world so filled with stresses, the individual has deep need for inner peace . . . We seem to be standing on the threshold of a great development of all the arts as agents of therapy. Of them all, each with particular special values, music seems perhaps the most personal form of expression, communicating meaning and feeling without need of speech or explanation. We who work with it and live with it intimately know its comfort, its solace and its joy."[*]

[*] New York Times, October 14, 1954.